UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
HAMMOND DIVISION

THOMAS NIEMIEC,                          )
                                         )
            Plaintiff,                   )
                                         )
            v.                           )        Misc. No.  2:12-cv-286
                                         )
CAROLYN W. COLVIN[1], Commissioner       )
of Social Security                       )
                                         )
            Defendant.                   )


OPINION AND ORDER

This matter is before the court on the petition for review of the decision of the

Commissioner of Social Security filed by the claimant, Thomas Niemiec, on July 25, 2012.  for

the following reasons, the decision of the Commissioner is **AFFIRMED**.


Background

The plaintiff, Thomas Niemiec, filed his application for Disability Insurance Benefits on

August 28, 2007.  (Tr. 117-122) After his application initially was denied and was denied again

upon reconsideration, Niemiec requested a hearing.  (Tr. 128-129) A hearing was held before

Administrative Law Judge Sherry Thompson.  (Tr. 47) Niemiec and vocational expert Thomas

Grzesik testified at the hearing.  (Tr. 63) On August 26, 2010, the ALJ issued a decision denying

benefits.  (Tr. 44-62) Niemiec requested a review of the ALJ's decision, but the Appeals Council

_____

[1]On February 14, 2013, Carolyn W. Colvin became the Acting Commissioner of Social
Security.  Pursuant to Federal Rule of Civil Procedure 25(d), Carolyn W. Colvin is automatically
substituted for Michael J. Astrue as the named Defendant.

denied review, making the ALJ's decision the Commissioner's final determination.  (Tr. 35-40)

Niemiec was born on August 17, 1960, making him 46 years old on the alleged onset date.  He had past relevant work as a maintenance mechanic or millwright and a commercial cleaner.  He was 70" tall and weighed 245 pounds.   His Body Mass Index was 33.9, indicating obesity.

Niemiec stated that he suffered from proliferative vitreoretinopathy/retinal detachment in the right eye, hearing loss in the right ear, diabetes, sleep apnea, left hip replacement, history of knee surgeries, and obesity.  He underwent several unsuccessful attempts to reattach the retina in his right eye.  The same surgery was successful on his left eye, and it was noted on all subsequent visits that he had either 20/20 or 20/25 vision in his left eye.  (Tr. 727, 729, 734, 743, 745, 749, 751) Following his left eye retina re-attachment surgery, his treating physician, Dr. John Wilson, stated that Niemiec could drive but should not lift over 20 pounds.  (Tr. 428)  In July 2007, Dr. Ann Williams, another treating source, noted that Niemiec could do work-related activities requiring a visual acuity of 20/20.  (Tr. 364)

Dr. Seenu Hariprasad, Niemiec's treating opthamologist, submitted a medical source statement regarding Niemiec's ability to perform work related tasks.  (Tr. 485) He determined that Niemeic could lift and carry less than 5 pounds and should avoid all postural activities, including climbing, balancing, stooping, crouching, kneeling, and crawling.  (Tr. 486) Dr. Hariprasad also noted that "this patient is monocular and needs to avoid activity that could put the left eye at risk."  (Tr. 485)

Niemiec also complained of sleep apnea.  On April 27, 2009, he underwent a Polysomnogram sleep study that revealed "severe obstructive sleep apnea which exacerbates in

the supine position.  This obstructive sleep-disordered breathing is associated with severe oxygen desaturations down to 78% and arousals which fragment the patient's sleep throughout the entire night."  (Tr. 484)   Niemiec was given a CPAP machine to use at night and subsequent examinations revealed that his lungs were clear to ausculation and otherwise normal.  (Tr. 385, 388, 389, 470, 472, 489, 497, 500, 503)

Niemiec also underwent a total hip replacement in 2002.  Since then, he developed arthritis and complained of pain with ambulation.  (Tr. 77) In July 2010, Niemiec visited Dr. Harry Moffitt.  He complained of hip pain as a 2 out of 10.  (Tr. 784) He had no pain with active or passive range of motion, no tenderness in his hips or thighs, and fully normal and symmetrical hip range of motion.  (Tr. 785)

At the hearing before the ALJ, Niemiec testified that his sleep apnea affected his daily activities.  He stated that he had difficulty with the CPAP machine and that it caused him sinus infections.  He often woke up at night and took off the machine.  (Tr. 78) He often woke up tired, was forced to take a nap the next day, and described himself as sluggish.  (Tr. 77, 78) His tiredness caused him to fall asleep when sitting approximately twice a day.  (Tr. 78-79)

With regard to his eye, Niemiec testified that he attempted to return to work after the surgical attempt to reattach his right retina, but he was forced to quit his job.  (Tr. 83-84) He stated that any fine reading work, like reading a computer, would strain his eyes. (Tr. 86-87) Small print appeared blurry to him, like it was moving.  (Tr. 86) He explained that if he was forced to put strain on his eyes, he would get headaches and pressure behind his eye.  (Tr. 87) He could concentrate his focus on something for only five or six minutes before having to close his eyes and take a break.  (Tr. 87)

The VE was next to testify. The ALJ asked the VE to assume a hypothetical person with the same age, education, and work experience as Niemiec, but who could lift and carry 5 pounds frequently, 10 pounds occasionally; sit for 6 hours, stand and/or walk for 6 hours; occasionally climb ramps or stairs; never climb ladders, ropes, or scaffolds; occasionally stoop, crouch, crawl, and balance; no unprotected heights or hazardous machinery; no concentrated exposure to vibration; and no exposure to very loud noise. (Tr. 103) The VE testified that the individual could not return to Niemiec's past relevant work but could perform representative jobs including: production assembler (DOT # 706.687-010; light/SVP 2; 6,000 positions); small parts assembler (DOT # 706.684-022, light/SVP 2; 4,000 positions); and electronics worker (DOT # 726.687-010, light/SVP 2; 500 positions). (Tr. 103-104) The ALJ also asked the VE if these jobs required an employee to read small print, or if they involved peripheral vision. (Tr. 104) The VE testified that these jobs did not require the ability to read small print or peripheral vision. (Tr. 104)

Next, the ALJ asked the VE to assume that a person had no limitations for sitting, standing, and walking; limited to lifting 5 pounds; no postural activities; and no hazards or environmental extremes. (Tr. 104) The VE testified that there would be jobs for such a person including dining service worker (DOT # 319.484-010, 9,000 jobs); housecleaner (DOT # 323.687-014; 11,000 jobs); and sales attendant (DOT # 299.677-010; 15,000 jobs). (Tr. 105) The ALJ noted for the record that these limitations came from Exhibit 18, which was the Medical Source Statement submitted by Dr. Hariprasad, Niemiec's treating Ophthalmologist. (Tr. 105) The VE later changed his answer for this hypothetical question indicating "there would be notice that there would be crouching involved occasionally for each of these. The numbers that I cited

would not reflect jobs that require crouching and they would be consistent." (Tr. 106)

The ALJ then asked the VE a hypothetical question based on Dr. Vanderlugt's Medical Source Statement in 20F. These limitations included lifting less than 10 pounds; standing and walking for one hour; no postural activities; limited pushing and pulling; no heights, moving machinery, or environmental and temperature extremes; and no vibration. (Tr. 106). The VE answered that this hypothetical would limit a person to sedentary work and would include representative jobs such as: call out operator (DOT # 237.367-014, 8,000 jobs); information clerk (DOT # 237.367-046, 7,500 jobs); and order clerk (DOT # 209.567-014, 1,000 jobs). (Tr. 107) Upon questioning by the ALJ, the VE testified that each of these jobs would involve frequent reading of fine print. However, the VE explained that if a person needed to take a break every five minutes, for 30 seconds to rest his eyes, this person still could perform the duties of the cited jobs. (Tr. 107) Lastly, the VE answered that if a person could focus on fine print for only 2 hours in an 8-hour workday, that person would be unable to perform these jobs. (Tr. 108)

The ALJ issued her decision denying benefits on August 26, 2010. (Tr. 57) At step one of the five step sequential analysis for determining whether an individual is disabled, the ALJ found that Niemiec had not engaged in substantial gainful activity since April 25, 2007, the alleged onset date. (Tr. 49) At step two, the ALJ determined that Niemiec had the following severe impairments: proliferative vitreoretinopathy/retinal detachment (non-diabetic) in the right eye; hearing loss in the right ear; diabetes; sleep apnea; a history of left hip replacement; and a history of knee surgeries. (Tr. 49-50) At step three, the ALJ found that Niemiec did not have an impairment or combination of impairments that met or medically equaled one of the listed impairments. (Tr. 50)

The ALJ next determined that Niemiec had the residual functional capacity to

perform light work as defined in 20 CFR 404.1567(b) except that: the claimant can lift and carry 10 pounds frequently and 20 pounds occasionally; the claimant can sit for 6 hours and can stand/walk for 6 hours; the claimant can occasionally climb ramps and stairs; the claimant should never climb ladders, ropes, or scaffolds; the claimant should avoid working at heights or around hazardous machinery; the claimant should avoid concentrated exposure to vibrations; and the claimant should avoid working in environments with loud noise.  (Tr. 50)

The ALJ began her explanation by summarizing Niemiec's testimony.  She noted that Niemiec complained that he did not have full mobility in his left wrist, he had to be careful turning his hip, his sleep apnea caused fatigue, he got dizzy from vertigo and fell down as a result, and he had difficulty walking and standing due to his hips and knees, which was made worse by his obesity.  (Tr. 51) His monocular vision precluded depth perception.  (Tr. 51) Niemiec reported that his medications did not cause any side effects.  (Tr. 51) The ALJ then explained that she found "the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence, and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual capacity assessment."  (Tr. 51)

The ALJ next summarized Niemiec's vision problems, which included surgeries for cataracts and retinal detachments in both eyes.  (Tr. 51) The ALJ explained that the evidence showed that Niemiec was doing fairly well from a vision perspective so that his allegations of serious, work-precluding vision were far less than fully credible.  (Tr. 51) The ALJ cited to the parts of the record documenting his eye surgeries and then went on to explain that Niemiec's eye doctor stated that Niemiec could drive but should not lift more than 20 pounds.  (Tr. 51) The ALJ gave this treating source's opinion controlling weight.  (Tr. 51) On March 17, 2008,

Niemiec's treating source, Dr. Ann Williams, stated that Niemiec had 20/25 vision in his right eye and 20/20 in his left. (Tr. 51-52) Dr. Williams stated that as of July 9, 2007, Niemiec could do work-related activities that required a visual acuity of 20/20. (Tr. 52) Following his right retina reattachment surgery, Dr. Hariprasad, one of Niemiec's eye doctors, noted that Niemiec was seeing fine and that his peripheral vision had improved. (Tr. 52) On examination, he had 20/20 vision in his left eye. (Tr. 51) Five months later, Dr. Williams reported that Niemiec had 20/40 vision in his right eye and 20/20 in his left eye. (Tr. 52) Dr. Williams told Niemiec he did not need to return for one year. (Tr. 52) The ALJ explained that this called into question the credibility of Niemiec's allegations of severe, work-precluding eye issues. (Tr. 52) To accommodate Niemiec's vision problems, including his depth perception, the ALJ included the following limitations: occasionally climb ramps and stairs; never climb ladders, ropes, or scaffolds; avoid working at heights or around hazardous machinery; and avoid concentrated exposure to vibrations. (Tr. 52)

The ALJ discussed Niemiec's hearing loss and diabetes before turning to his sleep apnea. (Tr. 52-53) The ALJ stated that although Niemiec had an April 27, 2009, diagnosis of severe obstructive sleep apnea, there was no documentation that persuaded her that this condition or its associated fatigue would prevent Niemiec from working in a highly limited, light exertional level. (Tr. 53) She explained that Niemiec had a CPAP machine that he used at night for this condition, and on December 25, 2009, his lungs were noted to be clear to auscultation. (Tr. 53) To the extent his fatigue was credible, it was accommodated for by the RFC limitations to only climb ramps and stairs occasionally, never climb ladders, ropes, or scaffolds, and avoid working at heights or around hazardous machinery. (Tr. 53)

The ALJ then explained that Niemiec had a history of left hip replacement, knee surgeries, and left wrist surgery. (Tr. 53) Niemiec complained that he did not have full mobility in his left wrist, experienced pain, had to be careful turning his hip, and had difficulty walking and standing. (Tr. 53) The ALJ explained that the objective evidence did not support the severity of Niemiec's allegations. (Tr. 53) On July 14, 2010, Niemiec visited Dr. Harry Moffitt with complaints of left hip pain. (Tr. 53) He reported that the pain was a 2 out of 10. (Tr. 53) He had no pain with active or passive range of motion, no tenderness in his hips or thighs, and fully normal and symmetrical range of motion in his hips. (Tr. 53) Dr. Moffitt stated that Niemiec should not kneel, lift his left knee higher than hip level, squat, and bend over at the hips to pick items off the floor, but the ALJ stated that she gave these opinions little weight because they were not supported by or consistent with the objective evidence, including Dr. Moffitt's "glowing" treatment notes. (Tr. 53)

The ALJ noted that she considered Niemiec's obesity and then discussed the physical consultative examination Niemiec underwent with Dr. Umar Waheed. (Tr. 53) At the examination, Niemiec's extremities had no edema, swelling, or deformity. (Tr. 53) His musculoskeletal examination was completely within normal limits, and he had a full range of motion throughout his body. (Tr. 53) Niemiec's November 27, 2006, and December 12, 2006, treatment records reflected that he had no pedal edema and no tenderness in his lower extremities. (Tr. 54) The ALJ explained that all of this called into question Niemiec's allegations of work–prohibiting hip, knee, and wrist pain. (Tr. 54) The ALJ then stated that she accommodated Niemiec's impairments by limiting him to a light exertional level with the following additional limitations: occasionally climbing ramps and stairs; never climbing ladders,

8

ropes, or scaffolds; avoiding working at heights or around hazardous machinery; and avoiding concentrated exposure to vibration.  (Tr. 54)

The ALJ next explained how she assessed Dr. Hariprasad's Medical Assessment of Ability to do Work-Related Activities.  (Tr. 54) Dr. Hariprasad stated that Niemiec should not lift or carry more than 5 pounds.  (Tr. 54) Dr. Hariprad also stated that Niemiec never should climb, balance, stoop, crouch, kneel, or crawl.  (Tr. 54) He further opined that Niemiec should avoid heights, moving machinery, temperature extremes, chemicals, dust, noise, fumes, and vibrations.  (Tr. 54) The ALJ stated that with the exception of the limitations relative to heights and moving machinery, she gave this opinion little weight because it was inconsistent with the objective medical evidence.  (Tr. 54) The ALJ pointed to Dr. Hariprasad's own statement that Niemiec was seeing fine.  (Tr. 54) On May 21, 2010, Niemiec had 20/40 vision in his right eye and 20/20 in his left.  (Tr. 54) The ALJ then stated that for the same reason, she gave little weight to Dr. Hariprasad's opinions that Niemiec could not bend, should not lift more than 10 pounds, should not do machine work, and should not do work that requires fine detail or peripheral vision.  (Tr. 54) The ALJ also stated that she gave little weight to Dr. Hariprasad's generic and overly broad statement that Niemiec should not do any work activity that could be hazardous to his eyes.  (Tr. 54) The ALJ did agree with Dr. Hariprasad's statement that Niemiec could stand and walk for 6 hours during an 8 hour work day and that his ability to sit was not limited.  (Tr. 54)

The ALJ next explained that she gave little weight to the "extreme opinions" prepared by Dr. David Vanderlugt in the Medical Assessment of Ability to do Work-Related Activities.  (Tr. 54) Dr. Vanderlugt stated that Niemiec could lift and/or carry objects of less than 10 pounds

9

only; could stand and walk for 1 hour during an 8 hour work day; never could climb, balance, stoop, crouch, kneel, or crawl; and should avoid heights, moving machinery, temperature extremes, noise, and vibrations. (Tr. 54) With the exception of some of the climbing limitations and limitations relative to heights and moving machinery, the ALJ found the remaining opinions inconsistent with and not supported by the objective evidence of record. (Tr. 54-55) She noted that the record showed that Niemiec had full range of motion throughout, and the reports of pain were scarce and minor. (Tr. 55)

The ALJ then summarized her findings. (Tr. 57) She explained that the RFC was supported by the objective medical evidence, which was relatively unremarkable. (Tr. 55) Dr. Hariprasad stated that Niemiec was "seeing fine" and had improved peripheral vision. (Tr. 55) The following May, Dr. Williams reported that Niemiec had 20/40 vision in his right eye and 20/20 in his left eye. (Tr. 55) On that day, there was no diabetic retinopathy, and Dr. Williams said that Niemiec did not need to return for a year. (Tr. 55) Together, Dr. Williams' statement and Niemiec's good vision called into "severe question" the credibility of Niemiec's allegations of severe, work-precluding eye issues. (Tr. 55) The ALJ concluded that the limitations from working at heights, doing some climbing, and working with hazardous machinery, fully accommodated Niemiec's eye issues. (Tr. 55)

The ALJ again referred to Niemic's visit wtih Dr. Moffitt, where he reported pain at a 2 on a 10 point scale. (Tr. 55) Niemiec had no pain with active or passive range of motion and no tenderness in his hips or thighs. (Tr. 55) Niemiec also had fully normal and symmetrical range of motion in his hips. (Tr. 55) At his consultative examination, Niemiec had no edema, swelling, or deformity. (Tr. 55) His musculoskeletal examination was completely within normal limits

and he had a full range of motion throughout his body.   (Tr. 55) The ALJ stated that this tends to show that Niemiec's hip, knee, and wrist issues were relatively minor and would preclude him from working in accordance with the highly limited, light exertional level set forth in the RFC assessment.  (Tr. 55) The ALJ then stated that Niemiec's own treating source stated that he could sit, stand, and walk for 6 hours in an 8 hour work day.  (Tr. 55)

At step four, the ALJ concluded that Niemiec was unable to perform his past relevant work, and at step five she found that there were jobs that existed in significant numbers in the national economy that Niemiec could perform.  (Tr. 55)

<u>Discussion</u>

The standard for judicial review of an ALJ's finding that a claimant is not disabled within the meaning of the Social Security Act is limited to a determination of whether those findings are supported by substantial evidence.   **42 U.S.C. § 405(g)** ("The findings of the Commissioner of Social Security, as to any fact, if supported by substantial evidence, shall be conclusive."); ***Kastner v. Astrue***, 697 F.3d 642, 646 (7th Cir. 2012); ***Schmidt v. Barnhart***, 395 F.3d 737, 744 (7th Cir. 2005); ***Lopez ex rel Lopez v. Barnhart***, 336 F.3d 535, 539 (7th Cir. 2003).  Substantial evidence has been defined as "such relevant evidence as a reasonable mind might accept to support such a conclusion." ***Richardson v. Perales***, 402 U.S. 389, 401, 91 S. Ct. 1420, 1427, 28 L. Ed.2d 852, (1972)(*quoting* **Consolidated Edison Company v. NRLB**, 305 U.S. 197, 229, 59 S. Ct. 206, 217, 83 L.Ed.2d 140 (1938)); *See also* **Shideler v. Astrue,** 688 F.3d 306, 310 (7th Cir. 2012)***; Jens v. Barnhart***, 347 F.3d 209, 212 (7th Cir. 2003); ***Sims v. Barnhart***, 309 F.3d 424, 428 (7th Cir. 2002).  An ALJ's decision must be affirmed if the findings are supported by substantial evidence and if there have been no errors of law.  ***Roddy v. Astrue,*** 705 F.3d 631, 636 (7th Cir.

2013); ***Rice v. Barnhart***, 384 F.3d 363, 368-369 (7th Cir. 2004); ***Scott v. Barnhart***, 297 F.3d 589, 593 (7th Cir. 2002). However, "the decision cannot stand if it lacks evidentiary support or an adequate discussion of the issues." ***Lopez***, 336 F.3d at 539.

Disability insurance benefits are available only to those individuals who can establish "disability" under the terms of the Social Security Act. The claimant must show that he is unable

> to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

**42 U.S.C. § 423(d)(1)(A)**.

The Social Security regulations enumerate the five-step sequential evaluation to be followed when determining whether a claimant has met the burden of establishing disability. **20 C.F.R. § 404.1520.** The ALJ first considers whether the claimant is presently employed or "engaged in substantial gainful activity." **20 C.F.R. § 404.1520(b).** If he is, the claimant is not disabled and the evaluation process is over. If he is not, the ALJ next addresses whether the claimant has a severe impairment or combination of impairments which "significantly limits . . . physical or mental ability to do basic work activities." **20 C.F.R. § 404.1520(c).** Third, the ALJ determines whether that severe impairment meets any of the impairments listed in the regulations. **20 C.F.R. § 401, pt. 404, subpt. P, app. 1**. If it does, then the impairment is acknowledged by the Commissioner to be conclusively disabling. However, if the impairment does not so limit the claimant's remaining capabilities, the ALJ reviews the claimant's "residual functional capacity" (RFC) and the physical and mental demands of his past work. If, at this fourth step, the claimant can perform his past relevant work, he will be found not disabled. **20 C.F.R. § 404.1520(e).**

However, if the claimant shows that his impairment is so severe that he is unable to engage in his past relevant work, then the burden of proof shifts to the Commissioner to establish that the claimant, in light of his age, education, job experience and functional capacity to work, is capable of performing other work and that such work exists in the national economy. **42 U.S.C. § 423(d)(2); 20 C.F.R. § 404.1520(f).**

Niemiec first argues that the ALJ failed to incorporate all of his limitations into the RFC analysis. SSR 96-8p explains how an ALJ should assess a claimant's RFC at steps four and five of the sequential evaluation. In a section entitled, "Narrative Discussion Requirements," SSR 96-8p specifically spells out what is needed in the ALJ's RFC analysis. This section of the Ruling provides:

> The RFC assessment must include a narrative discussion describing how the evidence supports each conclusion, citing specific medical facts (e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations). In assessing RFC, the adjudicator must discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis (i.e., 8 hours a day, for 5 days a week, or an equivalent work schedule), and describe the maximum
> amount of each work-related activity the individual can perform based on the evidence available in the case record. The adjudicator must also explain how any material inconsistencies or ambiguities in the evidence in the case record were considered and resolved.

SSR 96-8p (footnote omitted). Thus, as explained in this section of the Ruling, there is a difference between what the ALJ must contemplate and what she must articulate in her written decision. *See **Morphew v. Apfel***, 2000 WL 682661 at *3 ("There is a distinction here [in SSR 96-8p] between what the ALJ must consider and what the ALJ must articulate in the written opinion."); ***Lawson v. Apfel***, 2000 WL 683256, *2-4 (S.D.Ind. May 25, 2000) (ALJ who restricted the claimant to medium work satisfied the requirements of SSR 96-8p)("[SSR 96-8p]

does not require an ALJ to discuss all of a claimant's abilities on a function-by-function basis. Rather, an ALJ must explain how the evidence supports his or her conclusions about the claimant's limitations and must discuss the claimant's ability to perform sustained work activities.").

Niemiec first argues that the ALJ failed to account for his visual limitations when assessing his RFC. Niemiec testified that he had severely decreased vision in his left eye, and in support of his argument, he has pointed to a note prepared by Dr. Hariprasad that documented 20/40 vision in his left eye. Niemiec further asserts that he only was able to focus on something with his left eye for thirty minutes at a time and a total of two hours each day. Dr. Hariprasad also noted that Niemiec needed to avoid strenuous activities that could put his left eye at risk and should avoid machinery.

The Commissioner first responds that the ALJ found Niemiec's vision impairment to be a severe impairment. However, under the severe impairments, the ALJ listed only proliferative vitreoretinopathy/retinal detachment in the right eye. Niemiec's argument concerns whether the ALJ accounted for the limitations of his left eye, pointing specifically to Dr. Hariprasad's note that he must avoid strenuous activity to preserve his vision in his left eye.

Regardless, the court finds that the ALJ supported her RFC determination with substantial evidence. Niemiec pointed to one doctor's note, prepared in April 2007, arguing that it shows that the vision in his left eye was less than perfect. *See* Tr. 430. However, this note does not state what Niemiec claims. Dr. Pelzek recorded that Niemec's vision was 20/40 in his right eye and 20/20 in his left eye. Upon review of the record, the worst vision Dr. Hariprasad recorded for Niemiec's left eye was 20/25. Niemiec's left eye vision was recorded at 20/20 or

20/25.

The only contradictory evidence of record was Niemiec's testimony and Dr. Hariprasad's opinion that Niemiec should avoid strenuous activity to protect his left eye vision. However, the ALJ thoroughly explained why she rejected this evidence. The ALJ acknowledged that Niemiec had surgery on his left eye, but then she pointed to numerous medical records from Niemiec's treating physicians where it was reported that he had 20/20 vision in his left eye. In 2009, Dr. Hariprasad reported that Niemiec was seeing fine and that his peripheral vision had improved. The ALJ explained that Dr. Hariprasad's opinion that Niemiec should avoid activity that could be strenuous to his eyes was overly broad. The medical notes were consistent and uncontradicted in recording that Niemiec had perfect vision in his left eye, and this provided a sufficient basis for the ALJ's decision to reject Niemiec's testimony that his vision impairment demanded a more limited RFC and Dr. Hariprasad's broad opinion. The ALJ thoroughly explained this and provided ample supported, and Niemiec has been unable to point to even one treatment note indicating that the vision in his left eye was severely impaired and would benefit from a more limited RFC.

Niemiec predominately relied on his own testimony to support his argument that the ALJ failed to assess the limitations of his vision correctly. To the extent he intends to contest this as a failed credibility determination, the court disagrees. This court will sustain the ALJ's credibility determination unless it is "patently wrong" and not supported by the record. ***Schmidt v. Astrue***, 496 F.3d 833, 843 (7th Cir. 2007); ***Prochaska v. Barnhart***, 454 F.3d 731, 738 (7th Cir. 2006) ("Only if the trier of fact grounds his credibility finding in an observation or argument that is unreasonable or unsupported ... can the finding be reversed."). The ALJ's "unique position

to observe a witness" entitles his opinion to great deference.  *Nelson v. Apfel*, 131 F.3d 1228, 1237 (7th Cir. 1997); *Allord v. Barnhart*, 455 F.3d 818, 821 (7th Cir. 2006).  However, if the ALJ does not make explicit findings and does not explain them "in a way that affords meaningful review," the ALJ's credibility determination is not entitled to deference.  *Steele v. Barnhart*, 290 F.3d 936, 942 (7th Cir. 2002).  Further, "when such determinations rest on objective factors or fundamental implausibilities rather than subjective considerations [such as a claimant's demeanor], appellate courts have greater freedom to review the ALJ's decision." *Clifford v. Apfel*, 227 F.3d 863, 872 (7th Cir. 2000).

The ALJ must determine a claimant's credibility only after considering all of the claimant's "symptoms, including pain, and the extent to which [the claimant's] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." **20 C.F.R. §404.1529(a); *Arnold v. Barnhart***, 473 F.3d 816, 823 (7th Cir.2007)("subjective complaints need not be accepted insofar as they clash with other, objective medical evidence in the record."); *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004).  If the claimant's impairments reasonably could produce the symptoms of which the claimant is complaining, the ALJ must evaluate the intensity and persistence of the claimant's symptoms through consideration of the claimant's "medical history, the medical signs and laboratory findings, and statements from [the claimant, the claimant's] treating or examining physician or psychologist, or other persons about how [the claimant's] symptoms affect [the claimant]."  **20 C.F.R. §404.1529(** c); Schmidt v. Barnhart, 395 F.3d 737, 746-747 (7th Cir. 2005)("These regulations and cases, taken together, require an ALJ to articulate specific reasons for discounting a claimant's testimony as being less than credible, and preclude an ALJ from merely ignoring the testimony

or relying solely on a conflict between the objective medical evidence and the claimant's testimony as a basis for a negative credibility finding.").

Although a claimant's complaints of pain cannot be totally unsupported by the medical evidence, the ALJ may not make a credibility determination "solely on the basis of objective medical evidence." SSR 96-7p, at *1. *See also **Indoranto v. Barnhart**, 374 F.3d 470, 474 (7th Cir. 2004); **Carradine v. Barnhart**, 360 F.3d 751, 754 (7th Cir. 2004) ("If pain is disabling, the fact that its source is purely psychological does not disentitle the applicant to benefits."). Rather, if the

> [c]laimant indicates that pain is a significant factor of his or her alleged inability to work, the ALJ must obtain detailed descriptions of the claimant's daily activities by directing specific inquiries about the pain and its effects to the claimant. She must investigate all avenues presented that relate to pain, including claimant's prior work record, information and observations by treating physicians, examining physicians, and third parties. Factors that must be considered include the nature and intensity of the claimant's pain, precipitation and aggravating factors, dosage and effectiveness of any pain medications, other treatment for relief of pain, functional restrictions, and the claimant's daily activities. (internal citations omitted).

> **Luna v. Shalala**, 22 F.3d 687, 691 (7th Cir. 1994); *see also **Zurawski v. Halter**, 245 F.3d 881, 887-88 (7th Cir. 2001).

In addition, when the ALJ discounts the claimant's description of pain because it is inconsistent with the objective medical evidence, she must make more than "a single, conclusory statement . . . . The determination or decision must contain specific reasons for the finding on credibility, supported by the evidence in the case record, and must be sufficiently specific to make clear to the individual and to any subsequent reviewers the weight the adjudicator gave to the individual's statements and the reasons for that weight." SSR 96-7p, at *2. *See **Zurawski**, 245 F.3d at 887; **Diaz v. Chater**, 55 F.3d 300, 307-08 (7th Cir. 1995) (finding that the ALJ must

articulate, at some minimum level, her analysis of the evidence). She must "build an accurate and logical bridge from the evidence to [his] conclusion." ***Zurawski***, 245 F.3d at 887 (quoting ***Clifford v. Apfel***, 227 F.3d 863, 872 (7th Cir. 2000)). When the evidence conflicts regarding the extent of the claimant's limitations, the ALJ may not simply rely on a physician's statement that a claimant may return to work without examining the evidence the ALJ is rejecting. *See* ***Zurawski***, 245 F.3d at 888 (quoting ***Bauzo v. Bowen***, 803 F.2d 917, 923 (7th Cir. 1986)) ("Both the evidence favoring the claimant as well as the evidence favoring the claim's rejection must be examined, since review of the substantiality of evidence takes into account whatever in the record fairly detracts from its weight.") (emphasis in original).

As explained above, the ALJ pointed to objective medical evidence to contradict Niemiec's complaints of poor vision. Niemiec was unable to point to even one medical record that showed even moderate limitations in his left eye vision following surgery. The ALJ supported her decision with uncontradicted evidence of the vision in Niemiec's eye. No doctor recommended further limitations than the ALJ imposed, as Dr. Hariprasad's notation was not a specific limitation on the number of hours Niemiec could use his left eye. Therefore, the ALJ supported her decision with sufficient evidence, and Niemiec has failed to show that her credibility determination was patenty wrong.

Niemiec next argues that the ALJ erred in assessing his RFC by failing to account for his fatigue and sleepiness brought on by his severe sleep apnea. In support, Niemiec cites to a Polysomnogram sleep study used to detect his apnea. The test revealed that his obstructive sleep-disordered breathing was associated with severe oxygen desaturations down to 78% and arousals which fragmented his sleep throughout the night. In her opinion, the ALJ agreed that

Niemiec suffered from severe sleep apnea and cited to the sleep test. This shows that the ALJ considered this test in making her RFC determination. However, the ALJ further explained that Niemiec used a CPAP machine that treated his condition and that on a doctor's visit subsequent to the sleep study, his lungs were found to be clear to auscultation. The ALJ still imposed some limitations as a result of Niemiec's reported fatigue, but she determined that Niemiec was not limited to the extent he testified.

Because the ALJ acknowledged that Niemiec suffered from sleep apnea, citing specifically to the sleep study on which Niemiec relies, explained why she did not find it disabling, and pointed to supporting medical evidence, she satisfied her duty. Niemiec has pointed to no evidence that contradicts the ALJ's decision or which shows conflicting evidence in the subsequent doctor's visits showing that his lungs were not clear to auscultation. What Niemiec really asks the court to do is to find that the ALJ made an incorrect credibility determination and argues that she should have assigned greater weight to his testimony concerning his fatigue. However, the court will not overturn an ALJ's credibility determination unless it is patently wrong. And here, the ALJ supported her decision with objective medical evidence. Niemiec has not made the required showing.

Niemiec next argues that the ALJ failed to account for the pain he experienced in his hip as a result of prolonged standing. Niemiec explains that he had total hip replacement surgery in 2002 and eventually developed painful arthritis. Dr. Vanderlugt stated that Niemiec could not stand for more than 1 hour in an 8-hour work day as a result of his hip arthritis. However, contrary to this opinion, the ALJ determined that Niemiec could perform light work, which involves standing for up to 6 hours a day.

The ALJ is not required to adopt the opinion of every physician of record.  Rather, the ALJ has the duty to weigh the evidence and explain the basis of her conclusion.  And here, the ALJ did just that.  Although Dr. Vanderlugt was Niemiec's treating physician, a treating source's opinion only is entitled to controlling weight if the "opinion on the issue(s) of the nature and severity of [the claimant's] impairment(s) is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence" in the record.  **20 C.F.R. § 404.1527(d)(2);** *See also* ***Schmidt v. Astrue***, 496 F.3d 833, 842 (7th Cir. 2007); ***Gudgell v. Barnhart***, 345 F.3d 467, 470 (7th Cir. 2003).  The ALJ must "minimally articulate his reasons for crediting or rejecting evidence of disability." ***Clifford v. Apfel***, 227 F.3d 863, 870 (7th Cir. 2000) *(quoting* ***Scivally v. Sullivan***, 966 F.2d 1070, 1076 (7th Cir. 1992)); *See also* **20 C.F.R. § 404.1527(d)(2)** ("We will always give good reasons in our notice of determination or decision for the weight we give your treating source's opinion.").

Internal inconsistencies in a treating physician's opinion may provide a good reason to deny it controlling weight. **20 C.F.R. § 404.1527(c)(2);** *Clifford*, 227 F.3d at 871. Furthermore, controlling weight need not be given when a physician's opinions are inconsistent with his treatment notes or are contradicted by substantial evidence in the record, including the claimant's own testimony.  ***Schmidt***, 496 F.3d at 842 ("An ALJ thus may discount a treating physician's medical opinion if the opinion is inconsistent with the opinion of a consulting physician or when the treating physician's opinion is internally inconsistent, as long as he minimally articulates his reasons for crediting or rejecting evidence of disability."); *see e.g.* ***Latkowski v. Barnhart***, 93 Fed. Appx. 963, 970-71 (7th Cir. 2004); ***Jacoby v. Barnhart***, 93 Fed. Appx. 939, 942 (7th Cir. 2004).  Ultimately, the weight accorded a treating physician's opinion must balance all the

circumstances, with recognition that, while a treating physician "has spent more time with the claimant," the treating physician may also "bend over backwards to assist a patient in obtaining benefits...[and] is often not a specialist in the patient's ailments, as the other physicians who give evidence in a disability case usually are." ***Hofslien v. Barnhart***, 439 F.3d 375, 377 (7th Cir. 2006)(internal citations omitted).

The ALJ stated that she did not give great weight to Dr. Vanderlugt's opinion because she found the opinions extreme and unsupported by the medical notes. She explained that Niemiec had a full range of motion in his hips and extremities and that his reports of pain were scarce and minor. The ALJ pointed to a medical note where Niemiec reported that his pain was a 2/10. On examination, he had no pain with active or passive range of motion, no tenderness in the hips or thighs, and full range of motion in his hips. Other than Dr. Vanderlugt's individual opinion that Niemiec should not stand for more than one hour, there was nothing of record to support such a restrictive RFC finding, nor has Niemiec identified any treatment notes that supported Dr. Vanderlugt's opinion. For this reason, it is clear that the ALJ did not cherry pick evidence to support her opinion. Rather, she relied on the treatment notes that uncontestedly show that Niemiec was not as restricted as he argued.

Niemiec next argues that because the ALJ failed to incorporate all of the impairments he testified to experiencing into the hypothetical questions she posed to the VE, the VE gave erroneous testimony that must be addressed on remand. As explained above, Niemiec's challenges to the RFC were unsupported. However, he also raises new challenges in support of this argument. First, Niemiec complains that Dr. Hariprasad stated that Niemiec could not lift more than 5 pounds and could not perform any postural activities. In response to a hypothetical

incorporating these limitations, the VE testified that Niemiec could perform light work.   The regulations define light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects".  **20 CFR § 404.1567.**  Niemiec argues that if he only could lift 5 pounds, the VE's response was in conflict with the ALJ's hypothetical.

The ALJ did not limit Niemiec to lifting only 5 pounds in her RFC determination. Rather, the ALJ found that Niemiec had the RFC to lift weight equivalent to the limitations set forth in the definition of light work.  Therefore, it was not necessary for the ALJ to pose this limitation to the VE and remand on any alleged conflict would be futile.  To the extent Niemiec challenges this as an erroneous RFC determination, the court finds that the ALJ's RFC determination concerning Niemiec's lifting ability was well supported.  The ALJ explained that she gave controlling weight to treating physician Dr. Williams' opinion, which stated that Niemiec should not lift more than 20 pounds.  Niemiec has not argued or explained why the evidence contradicted Dr. Williams' opinion or why the ALJ should have found otherwise. Rather, he argues that the ALJ should have relied on the alternative opinion of Dr. Hariprasad. However, the ALJ noted that she did not give Dr. Hariprasad's controlling weight because it was inconsistent with the record as a whole.  Earlier in her opinion, the ALJ explained that there was a "severe question [to] the claimant's allegations of work-prohibiting hip, knee, and wrist issues."  (Tr. 54) Niemiec had full range of motion, reported little pain, and had no tenderness in his hips, knees, and wrists.  Because Niemiec has failed to show that the ALJ erred in relying on Dr. Williams' opinion and the ALJ explained the basis of her opinion to reject Dr. Hariprasad's opinion, the court finds that the ALJ met her burden to explain the RFC and that remand is not warranted on this issue.

Niemiec similarly argues that the ALJ asked the VE to identify positions that could be performed by someone who could do no postural activities.  Again, the VE responded that the individual could do light work.  SSR 96-9p states that an ability to stoop occasionally, up to one-third of the time, is required in most unskilled sedentary occupations.  For this reason, Niemiec argues that the VE's response was inconsistent with the limitation posed in the hypothetical.  Again, the ALJ did not impose a restriction on stooping or crouching in the RFC, and Niemiec has not demonstrated how the VE's response was inconsistent with the RFC determination the ALJ reached.  Regardless, at the hearing the expert indicated that the numbers he cited for the jobs he identified in response to the ALJ's hypothetical accounted for the difference between the DOT description and the hypothetical question.  The DOT descriptions for these positions indicated that many of the postural activities were not required at all.

The regulations allow the ALJ to rely on either the VE or the DOT when making a determination regarding available work for the claimant. *See* **20 C.F.R. § 404.1566(d), (e).** But if the VE's testimony and the DOT conflict, the ALJ first must obtain a reasonable explanation for the conflict. *Prochaska*, 454 F.3d at 735. Furthermore, before the ALJ can rely on the VE's testimony as substantial evidence, she must make the SSR 00–4p inquiry as to consistency with the DOT and elicit a response as to any discrepancies.  *Prochaska*, 454 F.3d at 735 (citing *Haddock v. Apfel*, 196 F.3d 1084, 1087 (10th Cir. 1999)). SSR 00–4p places the burden of making the DOT inquiry on the ALJ, not the claimant. *Prochaska,* 454 F.3d at 735.

An ALJ may "accept testimony from a VE that conflicts with the DOT when, for example, the VE's experience and knowledge in a given situation exceeds that of the DOT's authors." *Donahue*, 279 F.3d at 446. The ALJ also may accept the VE's conflicting testimony

when based on information in "other reliable publications." SSR 00–4p; ***Overman v. Astrue***, 546 F.3d 456, 464 (7th Cir. 2008). "The ALJ's reliance upon the VE's testimony is not reversible error because an ALJ may rely upon a VE's 'bottom-line' or 'purely conclusional' testimony, so long as data and reasoning underlying the opinion are 'available on demand.' " ***Overman,*** 546 F.3d at 464 (citing ***Donahue***, 279 F.3d at 446). *See also* ***Barrett v. Barnhart***, 355 F.3d 1065, 1067 (7th Cir. 2004) (citing same).

The ALJ asked the VE whether his testimony was consistent with the DOT, and the VE affirmed that it was. In response to the previous hypothetical, the VE even explained that the DOT would note that crouching was involved occasionally for each activity but that the numbers he cited would not reflect jobs that require crouching and would be consistent. Although the ALJ did not make the same inquiry with respect to this hypothetical, the ALJ had verified that the VE's response was consistent with the DOT and satisfied her duty. Niemiec's attorney did not identify this discrepancy at the hearing and has not shown that it was an apparent conflict the ALJ overlooked. Rather, the ALJ was permitted to rely on the VE's confirmation that his testimony was consistent with the DOT.

Niemiec also complains that the ALJ asked the VE if a person with the limitations given by Dr. Vanderlugt could work and that the VE responded with jobs that were inconsistent with Dr. Vanderlugt's RFC opinion. Specifically, Dr. Vanderlugt stated that Niemiec could not lift more than 10 pounds, stand or walk for more than one hour, could engage in no postural activities, and could not work at heights or near moving machinery. Once more, the ALJ did not incorporate these limitations into her RFC determination, so that it would be futile to remand on this ground. And, as explained above, the ALJ explained the basis for rejecting Dr. Vanderlugt's

24

opinion and for adopting an RFC inconsistent with his opinion. Niemiec has not argued that the ALJ erred in rejecting this opinion or pointed to any reason why the ALJ should have adopted it over Dr. Williams'.

Finally, Niemiec argues that the ALJ failed to assess the effect of his obesity on his other physical impairments. If a claimant is obese, the ALJ must address specifically the "incremental effect" of obesity on the claimant's limitations. *Gentle v. Barnhart*, 430 F.3d 865, 868 (7th Cir. 2005). Even if a claimant does not contend that obesity is one of his impairments, SSR 02-1p requires an ALJ to consider the effects of obesity on the claimant's other conditions. However, failure to consider explicitly these effects can be "harmless error." *Prochaska v. Barnhart*, 454 F.3d 731, 736 (7th Cir. 2006). Since the ALJ in *Prochaska* "sufficiently analyzed" the claimant's obesity (by implicitly considering the issue, in part by relying on medical documents that noted the claimant's height and weight), and because the claimant did not specify how obesity specifically impaired her work ability, the Seventh Circuit found that any error on the ALJ's part in explicitly considering the claimant's obesity was harmless. *Prochaska v. Barnhart*, 454 F.3d at 737. *See Skarbek v. Barnhart*, 390 F.3d 500, 504 (7th Cir. 2004)(ALJ's adoption of limitations suggested by doctors who were aware of claimant's obesity, plus claimant's failure in specifying how weight impaired the ability to work, was harmless error).

In her opinion, the ALJ acknowledged that Niemiec was obese and stated that she considered its effect on his RFC. (Tr. 50) Again, in her RFC assessment, the ALJ specifically stated that she considered the effects of his obesity in conjunction with Niemiec's hip, knee, and wrist problems. Niemiec also acknowledged that his obesity was well documented throughout his medical notes. It is clear that the ALJ both explicitly and implicitly considered Niemiec's

obesity and its affects on his other impairments when rendering her RFC determination. Niemiec has not pointed to any medical source that identified additional limitations due to his obesity. Therefore, remand is unwarranted on this issue.

Based on the foregoing, the decision of the Commissioner is **AFFIRMED.**

ENTERED this 5th day of September, 2013

/s/ Andrew P. Rodovich
United States Magistrate Judge